## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**DONTE GARRETT,**

      **Petitioner,**

**v.**                               **Case No.: 2:15-cv-02672**

**MARVIN C. PLUMLEY,**
**Warden, Huntsville Correctional Center,**

      **Respondent.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the court are Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 2), Petitioner's Motion for Appointment of Counsel, (ECF No. 3), and Respondent's Motion to Dismiss the Petition as Untimely, (ECF No. 10). This case is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned notes that the record before the court is well-developed and provides a sufficient basis upon which to resolve this matter without need for an evidentiary hearing. *See* Rule 8, Rules Governing Section 2254 Cases. Having thoroughly reviewed and considered the record, the undersigned **FINDS** that Petitioner's § 2254 petition is untimely under the one-year statute of limitations

provided in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss the Petition as Untimely, **DENY** Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, and **DISMISS** this case from the docket of the court.

## I.     Relevant Procedural and Factual History

On March 2, 2007, Petitioner Donte Garrett ("Petitioner") pled guilty in the Circuit Court of Kanawha County, West Virginia to one count of first-degree murder with the use of a firearm. (ECF No. 14-1 at 22-23).[1] Before the plea hearing, Petitioner underwent several psychological examinations, the findings of which led the trial court to conclude that Petitioner was competent to stand trial or enter his plea. (*Id.* at 40). At the plea hearing, Petitioner admitted to shooting Wayne McCants, his mother's boyfriend, "five times in the chest cavity," and conceded that he knew his actions were wrong at the time that they occurred. (ECF No. 14-1 at 23; ECF No. 14-2 at 112). When questioned why he shot the victim, Petitioner indicated that he did so to protect his child. (ECF No. 14-1 at 24). As part of the plea agreement, the prosecution agreed to recommend a life sentence with mercy, meaning that Petitioner would be eligible for parole after fifteen years' imprisonment. (*Id.* at 5-6). At Petitioner's April 30, 2007 sentencing hearing, Petitioner's counsel expressed that Petitioner was unhappy with his guilty plea and that Petitioner would have preferred to plead guilty to second-degree murder; as such, Petitioner's counsel moved to withdraw the guilty plea. (*Id.* at 37-38). The trial court denied the motion and sentenced Petitioner to life in prison with mercy.

[1] Some of the exhibits attached to Respondent's Motion to Dismiss the Petition as Untimely, (ECF No. 10), were distorted and difficult to read. Consequently, Respondent filed corrected versions of those exhibits on September 4, 2015. (ECF No. 14).

(*Id.* at 43, 48). The trial court's sentencing order was entered on May 31, 2007. (ECF No. 14-3 at 2-3). Petitioner did not file a direct appeal challenging his conviction or sentence to the Supreme Court of Appeals of West Virginia ("WVSCA").[2]

On May 11, 2009, Petitioner filed his first state habeas corpus petition in Kanawha County Circuit Court. (ECF No. 14-1 at 65, 75). Petitioner argued that his due process rights were violated when he was not advised of his right to challenge the trial court's competency evaluation. (*Id.* at 68). Petitioner also claimed that his trial counsel were ineffective for failing to investigate certain witnesses and neglecting to explain the defense of diminished capacity to him. (*Id.*) The circuit court denied Petitioner's first state habeas petition on June 24, 2009, and Petitioner appealed that decision to the WVSCA on October 11, 2009. (*Id.* at 77-81, 83-97). The WVSCA refused Petitioner's petition for appeal on May 21, 2010. (*Id.* at 99).

On January 16, 2012, Petitioner filed a second state habeas petition in Kanawha County Circuit Court. (*Id.* at 101-8). Petitioner averred that newly discovered evidence placed the trial court's competency finding "in doubt." (*Id.* at 104). The circuit court appointed counsel to represent Petitioner on his second habeas petition, and counsel subsequently filed an amended habeas petition raising additional grounds for relief. (*Id.* at 110, 112-14). Specifically, Petitioner asserted in his amended petition that his trial attorneys provided ineffective assistance of counsel when they failed to inform Petitioner of a potential diminished capacity defense based on his diagnosis of intermittent explosive disorder, told Petitioner that he would not be permitted to testify at trial, coerced his guilty plea, informed Petitioner that he would be released from

---

[2] Petitioner did appeal the trial court's denial of bond to the WVSCA. (ECF No. 14-1 at 52-60). His petition for appeal was refused on March 15, 2006. (*Id.* at 63).

prison after serving fifteen years if he pled guilty, advised Petitioner that he would not receive a sentence with mercy after a trial, failed to challenge the voluntariness of Petitioner's confession, and neglected to show Petitioner a surveillance tape provided by the prosecution during discovery. (*Id.* at 114-15). On September 5, 2012, the circuit court denied Petitioner's second state habeas petition. (*Id.* at 127-29). On September 26, 2012, Petitioner filed a notice of appeal in relation to the circuit court's decision. (*Id.* at 131-34). The WVSCA denied Petitioner's appeal in a June 10, 2013 memorandum decision. (ECF No. 14-2 at 42-43).

On May 6, 2014, Petitioner filed a third state habeas corpus petition in Kanawha County Circuit Court. (*Id.* at 45-60). In that petition, Petitioner raised four grounds for relief: (1) his state habeas counsel was ineffective for failing to contact Petitioner's prior psychiatrist to demonstrate that Petitioner was not competent at the time of the crime or the plea hearing; (2) state habeas counsel was ineffective for failing to contact Petitioner's trial counsel to establish that trial counsel did not advise Petitioner about the possibility of a diminished capacity defense; (3) trial counsel was ineffective at the time of the plea when they failed to explain the element of premeditation to Petitioner; and (4) newly discovered evidence from Petitioner's sister, Franshesca Garrett, required reversal of Petitioner's conviction. (*Id.* at 50-60). In discussing his fourth ground for relief, Petitioner asserted that before he pled guilty, the prosecution showed him a typed statement from a witness to the shooting named Germilla Garrett, who the prosecution described as Petitioner's sister, indicating that Petitioner had murdered McCants without provocation. (*Id.* at 48, 58). In his habeas brief, Petitioner explained that his sister's name was actually Franshesca Garrett and that, during a conversation between Petitioner and Franshesca in March 2014, she denied ever providing a statement to the

4

police about the shooting. (*Id.*) Petitioner asserted that on March 21, 2014, Franshesca provided him with a letter "describing the circumstances behind the shooting for the first time." (*Id.* at 48). On May 19, 2014, the circuit court denied Petitioner's request for habeas relief. (*Id.* at 63-64). On June 3, 2014, Petitioner filed a notice of appeal in the WVSCA. (*Id.* at 66-70). In a February 6, 2015 memorandum decision, the WVSCA denied Petitioner's appeal. (*Id.* at 112-15). With regard to Petitioner's newly discovered evidence argument, the WVSCA noted that Petitioner had presented a 2014 letter from Franshesca Garrett to the circuit court. (*Id.* at 115). The WVSCA explained that the letter "contains allegation of rumors that McCants molested [P]etitioner's son, and generally states that [P]etitioner is of good character. It does not, however, recant, refute, or otherwise even refer to the 2005 statement given by Germilla Garrett." (*Id.*) The WVSCA concluded that the letter "was not 'newly discovered evidence' that would have changed the outcome of [P]etitioner's plea agreement and conviction." (*Id.*)

Petitioner filed the instant § 2254 petition, along with a motion for appointment of counsel, in this court on March 9, 2015. (ECF Nos. 2 & 3). In his petition, Petitioner alleges two grounds for relief. First, Petitioner claims ineffective assistance of counsel based on his counsel's failure to move for an evidentiary hearing on the issue of insanity. (ECF No. 2 at 5). Second, Petitioner asserts that newly discovered evidence indicates "the prosecutor submitted false evidence during proceedings." (*Id.* at 7). Specifically, Petitioner maintains that, prior to the plea hearing, the prosecution "submitted a statement from a Germilla Garrett implicating [Petitioner] in the murder. Years after the plea, [Petitioner] learned that Germilla Garrett did no[t] exist." (*Id.*) Petitioner states that he subsequently spoke with Franshesca "who entered her statement into evidence for the first time" after their conversation. (*Id.*) Franshesca's statement is

5

apparently the alleged newly discovered evidence that Petitioner bases his claim on; however, Petitioner has not provided this court with the statement.

On May 4, 2015, the undersigned ordered Respondent to answer the petition. (ECF No. 6). On June 26, 2015, Respondent filed an answer, (ECF No. 12), and a Motion to Dismiss the Petition as Untimely, (ECF No. 10). On June 29, 2015, the undersigned entered an order permitting Petitioner forty-five days to respond to Respondent's motion to dismiss. (ECF No. 13). To date, Petitioner has not filed a response to Respondent's motion to dismiss.

## II.   <u>**Standard of Review**</u>

Respondent filed a motion to dismiss ostensibly under Federal Rule of Civil Procedure 12(b)(6), based on Petitioner's failure to timely file his petition. (ECF No. 10). Because Respondent filed an answer concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in § 2254 actions. *Id.* at 138-39.

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nevertheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice

or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a § 2254 case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.*

III. **Discussion**

   **A. Appointment of Counsel**

Petitioner requests that he be appointed counsel because he is unfamiliar with the law and believes that his constitutional rights were violated. (ECF No. 3 at 1). The law is well-settled that a habeas petitioner has no constitutional right to counsel. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1990). The Criminal Justice Act, 18 U.S.C. § 3006A, authorizes the United States District Court to appoint counsel to represent financially eligible individuals in actions brought pursuant to § 2254, "whenever the United States magistrate judge or the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). An analogous standard is set forth in 28 U.S.C. § 1915(e)(1), which governs the appointment of counsel for indigent litigants in civil actions. In both circumstances, the matter is left to the sound discretion of the court. As a general rule, habeas petitioners and indigent civil litigants are only provided counsel in "exceptional circumstances." *See, e.g., Rice v. Riley,* No. 4:13–3049–TMC, 2014 WL 5524461, at *1 (D.S.C. Oct. 31, 2014). When determining whether to appoint counsel, the court should consider several factors, including (1) the type and complexity of the case; (2) the ability of the petitioner to adequately investigate

and present his claim; (3) the likelihood of success on the merits of the application; and (4) the apparent need for an evidentiary hearing in order to resolve the case. *See, e.g., Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. United States Dist. Court*, 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); *Hoggard v. Purkett,* 29 F.3d 469, 471 (8th Cir. 1994). According to the Eighth Circuit Court of Appeals:

> The interests of justice require the court to appoint counsel when the district court conducts an evidentiary hearing on the petition. The appointment of counsel is discretionary when no evidentiary hearing is necessary. In exercising its discretion, the district court should consider the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, along with any other relevant factors. Where the issues involved can be properly resolved on the basis of the state court record, a district court does not abuse its discretion in denying a request for court-appointed counsel.

*Hoggard,* 29 F.3d at 471*.*

In this case, the undersigned **FINDS** that Petitioner's § 2254 petition can be properly resolved by looking to the state court record, without the need for an evidentiary hearing. Moreover, the issues raised by Petitioner's § 2254 petition are not complex and have been adequately briefed by Petitioner or his counsel in state habeas proceedings. The *pro se* filings by Petitioner in his first and third state habeas proceedings were sufficiently detailed and suitably presented the legal issues contained therein. Furthermore, as discussed below, Petitioner has no likelihood of success on the merits given the timeliness obstacle that his petition faces. Accordingly, because Petitioner fails to demonstrate exceptional circumstances that justify the appointment of counsel, the undersigned **DENIES** his Motion for Appointment of Counsel, (ECF No. 3).

**B. Timeliness**

The AEDPA contains a one-year statute of limitations within which a state prisoner may file a federal habeas corpus petition. 28 U.S.C. § 2244(d)(1). The one-year limitation period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Section 2244(d)(2) clarifies that the running of the one-year period is suspended for any time that a "properly filed" state post-conviction proceeding "is pending." *Id.* § 2244(d)(2). The Fourth Circuit has construed a state post-conviction proceeding to include all state court proceedings "from initial filing [in the trial court] to final disposition by the highest state court." *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir. 1999). Upon final disposition of the state post-conviction proceeding, "the running of the § 2244(d) one-year period resumes." *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir. 2000). In other words, the one-year period begins at the conclusion of direct review, but is statutorily tolled if collateral proceedings are initiated in state court. Once collateral state court proceedings conclude, the limitation period begins to run again from the point at which it was tolled by initiation of the collateral proceedings.

In this case, Petitioner does not claim that an impediment created by State action prevented him from filing a § 2254 petition, or that a newly recognized constitutional right retroactively applies to his habeas claims. Accordingly, neither § 2244(d)(1)(B), nor § 2244(d)(1)(C) are relevant to the timeliness issue. Petitioner does allege that he was not aware that Germilla Garrett did not exist until "years after [his] plea" and that his sister, Franshesca, provided a statement thereafter, thus raising the possibility that he may argue "newly discovered evidence" and the application of § 2244(d)(1)(D). Petitioner does not specify in his § 2254 petition exactly when he learned that Germilla Garrett did not exist or when Franshesca provided her letter, but in his third state habeas petition, Petitioner claims that he began speaking with Franshesca about his case in March 2014 and that Franshesca authored her letter on March 21, 2014. (ECF No. 14-2 at 48). As such, if Petitioner did not learn of the facts underlying ground two of his § 2254 petition until March 2014, shortly before he filed his third state habeas petition which tolled AEDPA's one-year statute of limitations, then ground two is arguably timely, *unless* the factual predicate of the ground could have been discovered earlier through the exercise of reasonable diligence.[3] *See* 28 U.S.C. § 2244(d)(1)(D).

However, § 2244(d)(1)(D) does not apply to ground two of Petitioner's petition because he could have discovered the factual predicate for that claim long before March 2014. Common sense dictates that Petitioner should have known he did not have a sister named Germilla Garrett as soon as he was made aware that Germilla Garrett provided a statement incriminating him. Indeed, Petitioner asserted in his *pro se* third state habeas brief to the WVSCA that he informed the prosecution that he did not have a sister

---

[3] Petitioner does not claim that ground one of the § 2254 petition was based on newly discovered evidence. (ECF No. 2 at 5). To the contrary, the record indicates that Petitioner raised similar claims related to his competency in his first and second state habeas petitions. (ECF No. 14-1 at 69-71, 104-07).

named Germilla Garrett *before* he pled guilty. (ECF No. 14-2 at 89). Consequently, Petitioner's more recent claim that he discovered Germilla Garrett did not exist "years after [his] plea" contradicts his earlier assertions and is wholly unconvincing.[4] As for Franshesca's 2014 letter, it is unclear whether Petitioner has more than one sister or whether Germilla Garrett was in fact Franshesca Garrett, although Petitioner indicated in his third state habeas appeal brief that the prosecution notified him before the plea hearing that the statement from Germilla Garrett was actually attributable to Franshesca. (*Id.*) In any event, Petitioner has not provided the 2014 letter in this action, and therefore, he has not met his burden to demonstrate that § 2244(d)(1)(D) applies to his claim. *See Gray v. Ballard*, No. 2:13-23807, 2015 WL 1292787, at *2 (S.D.W.Va. Mar. 23, 2015) (recognizing that petitioner has burden to establish applicability of § 2244(d)(1)(D)); *Perez v. Perry*, No. 1:14CV311, 2015 WL 401759, at *3 (M.D.N.C. Jan. 28, 2015) (collecting cases stating same). Moreover, given the WVSCA's summary of the letter's contents, the facts underlying the letter were known to, or could have been discovered by Petitioner using due diligence, before he entered his plea. According to

---

[4] In addition, while "[m]ultiple courts have held that a witness's recantation can serve as the factual predicate from which the limitations period begins to run," the WVSCA found that the 2014 letter from Franshesca did not "recant, refute, or otherwise even refer to the 2005 statement given by Germilla Garrett." *DiCaprio-Cuozzo v. Johnson*, 744 F. Supp. 2d 548, 557 (E.D. Va. 2010); (ECF No. 14-2 at 115). Accordingly, any claim by Petitioner that he first discovered the statement from Germilla Garrett was "false evidence" after receiving Franshesca's 2014 letter is unsupported by the record. Furthermore, to the extent that Petitioner might argue that he only discovered his sister never provided a statement to the police during their 2014 conversation, Petitioner *could have* discovered this fact with due diligence long before that time. Any assertion by Petitioner that he was forbidden from speaking with his sister because she was a potential prosecution witness in his case is insufficient to excuse his lack of diligence. *See Santiago v. Barone*, No. 10-649, 2012 WL 6151748, at *2 (E.D. Pa. Dec. 10, 2012) (rejecting similar claim). Indeed, Petitioner has provided no evidence that he was prohibited from conversing with his sister about her purported statement after he entered his plea and was sentenced. Certainly, Petitioner's counsel could have investigated any statement by Petitioner's sister prior to his plea hearing. *See Wood v. Spencer*, 487 F.3d 1, 5-6 (1st Cir. 2007) (applying due diligence standard under § 2244(d)(1)(D) to petitioner's trial counsel). Even assuming that Petitioner could not have discovered on his own that his sister denied providing a statement to the police until after the sentencing order was entered, § 2244(d)(1)(A) still applies because there is no evidence that Petitioner was prevented from contacting his sister before the period of time for seeking direct review expired.

the WVSCA, the letter "generally states that [P]etitioner is of good character" and that there were "rumors that McCants molested [P]etitioner's son." (ECF No. 14-2 at 115). Petitioner has not challenged the WVSCA's summary of Franshesca's letter in this habeas proceeding. Clearly, Petitioner would have known about his own purportedly good character before pleading guilty. Additionally, the record indicates that Petitioner knew about the rumors concerning the victim's interaction with Petitioner's son before pleading guilty. At the plea hearing, Petitioner asserted that he shot McCants to protect his child and that his counsel had explained the law of self-defense to him, but he still wished to plead guilty to first-degree murder.[5] (ECF No. 14-1 at 24); *see also* (ECF No. 14-2 at 89) (Petitioner indicating in third habeas appeal brief that before plea hearing, he maintained altercation immediately preceding McCants's death began when Petitioner confronted McCants about allegedly molesting Petitioner's son). Accordingly, the factual predicate for ground two was known to Petitioner, or discoverable to Petitioner, much earlier than he argues.

Because the factual predicate for ground two of the petition was known to Petitioner, or could have been discovered by him using due diligence, prior to the date that the circuit court entered its sentencing order on May 31, 2007, § 2244(d)(1)(A) applies to his entire petition. Consequently, the limitations period for Petitioner's § 2254 petition began running "on the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Absent an extension for good cause, Rule 5 of the West Virginia Rules of Appellate Procedure allows a petitioner four months from the date on which a

---

[5] Even if Petitioner did not know about the rumors described in Franshesca's 2014 letter before pleading guilty, it is difficult to understand how learning of such rumors after the shooting occurred would entitle him to relief. Petitioner's state of mind *at the time of the shooting* is the relevant inquiry.

circuit court's order is entered in the clerk's office to perfect an appeal of the order to the WVSCA. *See Macri v. Ballard*, No. 5:14CV11, 2015 WL 892957, at *9 (N.D.W.Va. Mar. 2, 2015). Because Petitioner did not file a direct appeal, one day after that four-month period had expired,[6] on October 1, 2007, Petitioner's judgment became final, and the AEDPA's statute of limitations began to run.[7] The next proceeding initiated by Petitioner challenging his conviction or sentence did not occur until he filed his first state habeas petition on May 11, 2009. (ECF No. 14-1 at 65-75). While the filing of the state habeas petition tolled AEDPA's limitations period from running, Petitioner did not file that petition until approximately seven months ***after*** the AEDPA's statute of limitations expired for Petitioner's § 2254 petition on October 1, 2008.[8] Accordingly, the undersigned **FINDS** that Petitioner's § 2254 petition is untimely because it was not filed until March 9, 2015, and the AEDPA's statute of limitations had expired for Petitioner's claims on October 1, 2008. (ECF No. 2 at 1).[9]

---

[6] Under Federal Rule of Civil Procedure 6(a), the one-year limitation period commences the day after the event triggering the period. *See Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

[7] Because he did not appeal his conviction and sentence to the WVSCA, Petitioner is not entitled to the 90-day credit within which he could have sought a writ of certiorari from the United States Supreme Court after the WVSCA's decision. *See Parmley v. Norris*, 586 F.3d 1066, 1073 (8th Cir. 2009); *Bellamy v. Plumley*, No. 2:14-cv-24947, 2015 WL 2155697, at *5 n.7 (S.D.W.Va. May 7, 2015); Sup. Ct. R. 13(1).

[8] Additionally, another one year and seven months passed between the WVSCA's denial of Petitioner's first state habeas appeal on May 21, 2010, (ECF No. 14-1 at 99), and Petitioner's filing of his second state habeas petition in Kanawha County Circuit Court on January 16, 2012, (ECF No. 14-1 at 101-09).

[9] In *McQuiggin v. Perkins*, ____ U.S. ____, 133 S.Ct. 1924, 1933-35, 185 L.Ed.2d 1019 (2013), the Supreme Court held that 28 U.S.C. § 2244(d)(1)(D) did not preclude a federal court from "entertaining an untimely first federal habeas [§ 2254] petition raising a convincing claim of actual innocence." Petitioner has not explicitly raised a claim of actual innocence in his petition. Assuming *arguendo* that he did, a claim of actual innocence requires *new* evidence, at least where *factual* innocence is asserted. *McQuiggin*, 133 S. Ct. at 1933 (citing *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)); *United States v. MacDonald*, 641 F.3d 596, 612 (4th Cir. 2011). Petitioner has presented no newly discovered evidence to this court—the facts in Franshesca's 2014 letter, as described by the WVSCA, along with Petitioner's assertion that Germilla Garrett never existed are not newly discovered. Even if those facts were, any claim of factual innocence under *McQuiggin* would be destined to fail as Petitioner's contention would not be sufficiently "convincing." Petitioner admitted to shooting and intending to kill the victim, and he was found competent at both the time of the crime and the plea hearing. (ECF No. 14-1 at 23-24, 28, 40).

### IV.   **Proposal and Recommendations**

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows**:**

1.      Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 2), be **DENIED** and **DISMISSED, with prejudice**; and

2.      Respondent's Motion to Dismiss the Petition as Untimely, (ECF No. 10), be **GRANTED**.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and counsel of record.

**FILED:** September 9, 2015

Cheryl A. Eifert
United States Magistrate Judge